UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DAVID F.,[1]

                            Plaintiff,                    **DECISION AND ORDER**

v.                                            1:25-cv-169-JJM

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

_____

        Plaintiff brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to

review the final determination of the Commissioner of Social Security that he was not disabled.

Before the court are the parties' cross-motions for judgment on the pleadings [5, 11].[2] The

parties have consented to my jurisdiction [13]. Having reviewed their submissions [5, 11, 12],

the Commissioner's motion is granted, and plaintiff's motion is denied.

## BACKGROUND

        The parties' familiarity with the 1,238-page administrative record [3, 4] is

presumed. On April 20, 2016, plaintiff filed an application for supplemental security income.

Administrative Record [3] at 57. Plaintiff alleged that he suffered from a "hole in [his] brain",

seizures, associated shaking and fatigue, and difficulties with basic math and logic. Id. at 171.

Plaintiff's claim was denied. Id. at 55. Plaintiff requested a hearing. Id. at 68-69.

---

[1]      In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]      Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination.

## A.   Previous Hearings and Remands

On October 29, 2018, Administrative Law Judge ("ALJ") William Weir conducted a hearing and, on February 19, 2019, issued a decision denying plaintiff's claim. [3] at 15-23. The decision was appealed to this court and remanded in 2021. *See* David F. v. Commissioner of Social Security, Case No. 1:20-cv-00435-MJP.

On June 6, 2022, ALJ Weir held another hearing, and issued a decision on January 11, 2023 denying plaintiff's claim. Id. at 357-73. That decision was also appealed to this court, and remanded upon stipulation of the parties. *See* David F. v. Commissioner of Social Security, Case No. 1:23-cv-00362-EAW.

## B.   Medical Evidence

Plaintiff has treated with a neurologist for seizures secondary to open-lip schizencephaly[3] since he was 14 years old. *See* id. at 221-255. These seizures occurred "on and off" and were often associated with "extreme" exhaustion, nausea, and occasionally vomiting. *See* id. at 221, 288, 304. While these seizures occurred frequently at first, they have - over the years and with medication - become rare, with only one or two "breakthrough" seizures occurring every few years. *See* id. at 342, 351, 611, 1104, 1207.

On June 10, 2016, Donna Miller, D.O., conducted a consultative examination of plaintiff. Id. at 267-270. Plaintiff reported grand mal/tonic-clonic seizures, an occasional aura of feeling sweaty, and a postictal state (post-seizure recovery period) that continued through the rest

---

[3]      Schizencephaly "is a brain malformation that's present at birth (congenital). It causes slits (clefts) to form in [the] brain's cerebral hemispheres". *Schizencephaly: What It Is, Causes, Symptoms & Types*, Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/25013-schizencephaly (last updated May 30, 2023). Open-lip schizencephaly means that "[t]he cleft extends from the outside of [the] brain to the ventricles inside of [the] brain. Ventricles are chambers that contain cerebrospinal fluid." Id. Symptoms of schizencephaly "vary based on the size and location of the cleft" but can include small head size, paralysis, seizures, and developmental delays. Id.

of the day. Id. at 267. His physical examination was normal. Id. at 268-69. Dr. Miller opined that plaintiff "should refrain from operating heavy machinery, driving, or working with unprotected heights". Id. at 269.

On June 10, 2016, Christine Ransom, Ph.D., conducted a consultative psychological examination of plaintiff. Id. at 264. Plaintiff denied having any mental health issues, including cognitive deficiencies. Id. His mental status examination was normal, his intellectual functioning "appeared to be average", his general fund of information was "appropriate", and his insight and judgment were "[a]dequate".  Id. at 265-66. Dr. Ransom opined that plaintiff would be able to follow simple directions, perform simple tasks independently, maintain concentration and attention for simple tasks, maintain a schedule, perform complex tasks, relate appropriately with others, and deal with stress. Id. at 266.

On October 16, 2017, treating neurologist Mohammed Qasaymeh, M.D., completed a seizure questionnaire for plaintiff, indicating diagnoses of generalized convulsive epilepsy, schizencephaly porencephaly, and muscle twitching. Id. at 277. Plaintiff experienced an average of one seizure per week. Id. Seizures came without warning, lasted a few minutes, and caused postictal effects that would last up to 30 minutes. Id. at 277-78. Dr. Qasaymeh opined that plaintiff would, accordingly, require additional supervision at work, would sometimes need one to two unscheduled breaks per day, could tolerate only a low stress job, and would miss three or four days a month. Id. at 280. Dr. Qasaymeh provided another, substantively similar, statement on June 15, 2018. Id. at 316-19.

On May 10, 2022, Janine Ippolito, Psy.D., performed a psychiatric evaluation. Id. at 722. Plaintiff reported memory problems and difficulty concentrating. Id. On mental status examination, Dr. Ippolito assessed plaintiff's attention and concentration as "[i]mpaired due to

-3-

suspected limited intellectual functioning". Id. 723. His memory skills were also "impaired" and his "[i]ntellectual functioning is estimated to be below average". Id. His remaining mental findings were normal. Id.

Dr. Ippolito opined that plaintiff was able to understand simple instructions, use reason and judgment, interact adequately with others, sustain a routine and regular attendance, and take appropriate precautions. Id. at 724. However, plaintiff would have moderate limitations in his ability to understand, remember, and apply complex directions, and to sustain concentration and pace due to his "suspected cognitive deficits". Id. Dr. Ippolito recommended that plaintiff have a "neuropsychological evaluation to rule out [the] presence of neurocognitive disorder secondary to seizures". Id.

**C.      The Most Recent Hearing**

On April 28, 2024, ALJ Stephan Bell commenced a third hearing. [3] at 784-828. Plaintiff was represented by an attorney. Id. At the hearing, ALJ Bell heard testimony from plaintiff (id. at 812-21) as well as plaintiff's mother (id. at 796-800).

During the hearing, plaintiff's counsel raised the issue of neurocognitive testing, as recommended by Dr. Ippolito. Id. at 821. ALJ Bell stated that she was not sure she would be able to get someone qualified to conduct such an evaluation, and that the opinion evidence as to his alleged need for supervision, if credited, would suffice to find plaintiff disabled. Id. at 822. ALJ Bell agreed to investigate getting a medical expert, if she concluded it was necessary. Id. Plaintiff's counsel agreed to this approach. Id.

On October 9, 2024, ALJ Bell continued the hearing and took testimony from Ronald Koenig, M.D., a board-certified neurologist. Id. at 789-95. Dr. Koenig testified that the medical evidence supported a finding that plaintiff had "Type B" dyscognitive seizures. Id. at

-4-

789. He opined that this condition would cause work-related limitations due to the risk of plaintiff losing consciousness, and that plaintiff would not be able to drive, climb or work at height, work around machinery, or be exposed to water. Id. at 790. He disagreed with Dr. Qasaymeh's opinion regarding required absences and supervision, testifying that plaintiff would be absent from work or disruptive only insofar as he had a seizure. Id. at 791. His review of the record also indicated that plaintiff suffered fewer seizures than suggested by Dr. Qasaymeh, and he remarked that the seizures were actually "quite sporadic". Id.

On examination by plaintiff's counsel, Dr. Koenig testified that because of the location of plaintiff's schizencephaly, such condition could cause memory or cognitive issues. Id. at 792. However, he deferred to psychologist or psychiatrist to confirm the existence of such impairments. Id. at 792-93. He testified that had "no reason to dispute" Dr. Ippolito's assessment of limitations due to suspected cognitive defects. Id. at 793.

A vocational expert testified that a hypothetical person with limitations as described by ALJ Bell could perform certain jobs that exist in the national economy. Id. at 825. However, if such person were off-task 15 to 30 minutes per day in addition to scheduled breaks, or required a companion to accompany them, such person would be precluded from competitive work. Id. 825-26.

### D.    ALJ Bell's Decision

On November 6, 2024, ALJ Bell issued a Notice of Decision denying plaintiff's claim. Id. at 751-74. She found that plaintiff had the severe impairment of open-lip schizencephaly with seizure disorder. Id. at 754. She found that plaintiff would have less-than-marked limitations in physical functioning; understanding, remembering, or applying

information; interacting with others, concentrating, persisting, or maintaining pace; and/or adapting or managing oneself. Id. at 755-57.

ALJ Bell found that plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR §416.967(a), with certain environmental restrictions, and would be further limited to performing simple, routine tasks and making simple work-related decisions. Id. at 757.

ALJ Bell found that plaintiff had no past relevant work, but that there were jobs that existed in significant numbers in the national economy that he could perform. Id. at 772-73. Accordingly, she found that plaintiff was not disabled. Id. at 773. The Appeals Council denied plaintiff's request for review. Id. at 1.

## ANALYSIS

### A.    Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938); *see also* Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Colgan v. Kijakazi, 22 F.4th 353, 359 (2d Cir. 2022) ("[a]lthough . . . the evidentiary threshold for the substantial evidence standard 'is not high,' . . . the substantial evidence standard is also not merely hortatory: It

requires relevant evidence which would lead a 'reasonable mind' to concur in the ALJ's factual determinations").

An adjudicator evaluating a claim for Social Security benefits employs a five-step sequential process. *See* Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B.    Did the ALJ fail to develop the record?**

Plaintiff argues that remand is required because ALJ Bell failed to sufficiently develop the record with respect to plaintiff's cognitive abilities and/or deficiencies resulting from his schizencephaly. Plaintiff's Memorandum of Law [5-1] at 1, 10-14. I disagree.

On appeal, "[t]he relevant inquiry is whether the ALJ applied the correct legal standards and whether [her] determination is supported by substantial evidence". Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013). A "threshold requirement" of substantial evidence is the ALJ's possession of a "complete" administrative record. Dougherty-Noteboom v. Berryhill, 2018 WL 3866671, *7 (W.D.N.Y. 2018); *see* 20 C.F.R. §404.1512(b)(1); 416.912(b)(1) ("[b]efore we make a determination that you are not disabled, we will develop your complete medical history"). If the administrative record is not complete, the ALJ has an "affirmative obligation to develop [it] . . . even when the claimant is represented by counsel". Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996).

However, this obligation "is not unlimited". Martin v. Saul, 2020 WL 5096057, *4 (W.D.N.Y. 2020). Moreover, the claimant bears the ultimate burden to prove that he is under a disability. *See* McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014). Accordingly, "a lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly

when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits". Barry v. Colvin, 606 F. App'x 621, 622 (2d Cir. 2015).

Social Security regulations provide that an ALJ "may" request a consultative examination "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim". §404.1519a(b); 416.919a(b). That is, the decision to request a consultative examination is discretionary, and, in any event, "an ALJ is not required to order a consultative examination if the facts do not warrant or suggest the need for it". Tankisi v. Commissioner of Social Security, 521 F. App'x 29, 32, 34 (2d Cir. 2013) ("[the regulations] suggest remand is not always required when an ALJ fails in his duty to request opinions, particularly where, as here, the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity.").

Rather, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history', the ALJ is under no obligation to seek additional information". Perez, 77 F.3d at 48; *see* Timothy D. v. Commissioner of Social Security, 652 F. Supp. 3d 387, 394 (W.D.N.Y. 2023). An "obvious gap" in the administrative record generally entails missing treatment records, or medical opinions that are vague or inconsistent with the source's treatment notes. Thomas v. Commissioner of Social Security, 2022 WL 523544, *7 (E.D.N.Y. 2022).

Ultimately, it is the ALJ, not any medical source, who is responsible for formulating a claimant's RFC. *See* 20 C.F.R. §§404.1546(c), 404.1527(d)(2); §§416.946(c), 416.927(d)(2); Curry v. Commissioner of Social Security, 855 F. App'x 46, 48 (2d Cir. 2021) (Summary Order). "Accordingly, the issue is whether the record is clear[] and contains some useful assessment of the claimant's limitations from a medical source sufficient to support the

RFC finding." <u>Williams v. Commissioner of Social Security</u>, 366 F. Supp. 3d 411, 417 (W.D.N.Y. 2019); *see also* <u>Muhammad v. Colvin</u>, 2017 WL 4837583, *4 (W.D.N.Y. 2017).

Here, the administrative record contained: plaintiff's treatment records relative to his neurological condition, an opinion from plaintiff's treating neurologist, two opinions from psychiatric consultative examiners, an opinion of medical consultative examiner, and testimony of a board-certified neurologist. *See* [3] at 766-71. Of these, only Dr. Ippolito's opinion made any mention of "suspected cognitive deficits", for which she assessed moderate limitations in plaintiff's ability to understand, remember, and concentrate. <u>Id.</u> at 722-24. However, ALJ Bell gave that aspect of Dr. Ippolito's opinion "little weight" on the grounds that it was inconsistent with Dr. Ransom's opinion, plaintiff's normal mental status examinations, as well as plaintiff's self-reported activities. <u>Id.</u> at 771; *see* <u>Aponte v. Kijakazi</u>, 692 F. Supp. 3d 257, 265-66 (S.D.N.Y. 2023) ("an ALJ is 'entitled to disregard favorable portions of medical opinions,' as long as [she] gives 'logical reasons to support her decision to do so.'")

Plaintiff appears to have sought no treatment for cognitive issues. On several occasions, plaintiff denied having any cognitive symptoms. <u>Id.</u> at 264 ("[plaintiff] denies all mental health difficulties including . . . cognitive symptoms and deficits"), 651-87 (DENT records). Plaintiff's testimony at the hearing focused on his seizures and related symptoms, with little mention of any cognitive issues. *Cf.* <u>id.</u> at 818 (testifying that he would sometimes forget to take his medication); 821 (testifying that he could, to some extent, concentrate *during* a minor seizure).

Certainly, the record contains some references to the possibility of cognitive delay, and such symptoms would be consistent with plaintiff's diagnosis of schizencephaly. However, general and undeveloped references to a potential impairment are insufficient to

trigger the ALJ's duty to develop the record. *See* <u>Wallace v. Colvin</u>, 120 F. Supp. 3d 300, 305 (W.D.N.Y. 2015) ("in general, passing references in the record to a claimant's low intelligence do not trigger an ALJ's obligation to order intelligence testing, particularly where other evidence of record, such as the claimant's education, work history, and activities of daily living, does not suggest a severe cognitive impairment"); <u>Crawford v. Astrue</u>, 2014 WL 4829544, *24-25 (W.D.N.Y. 2014) (rejecting remand for intelligence testing, despite references in the record to "mild mental retardation" and participation in special education, where the medical history was complete and evidence supported the ALJ's decision).

Here, ALJ Bell *did* attempt to develop the record, in a manner that was agreeable to plaintiff's counsel, by obtaining the testimony of Dr. Koenig. While that attempt failed to elucidate any cognitive issues, the record upon which ALJ Bell made her decision was nonetheless complete. *See* <u>Perez</u>, 77 F.3d at 48; <u>Timothy D.</u>, 652 F. Supp. 3d at 394.

Where the record is complete, the ALJ does not err in making assessments about plaintiff's mental function based on the available evidence. *See* <u>Monroe</u>, 676 F. App'x at 8 (affirming where the ALJ relied on "descriptions of Monroe's symptoms, . . . contemporaneous medical assessments of Monroe's mood, energy, affect . . . [as well as] well-documented notes relating to Monroe's social activities relevant to her functional capacity"); <u>Schrader</u>, 2020 WL 2847276 at *7 ("[t]he ALJ's assessment of plaintiff's mental functioning was reasonable and common-sense based on a complete record before her [including] . . . three years of detailed mental health treatment notes which contained contemporaneous assessments of plaintiff's mental functioning").

"Ultimately, it is Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ." <u>Beaman v. Commissioner of Social Security</u>, 2020 WL 473618, *6

(W.D.N.Y. 2020). Plaintiff does not meet that burden here. Therefore, ALJ Bell's decision must be affirmed.

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [11] is granted, and plaintiff's motion [5] is denied.

**SO ORDERED**.

Dated: July 13, 2026

/s/ Jeremiah J. McCarthy
JEREMIAH J. McCARTHY
United States Magistrate Judge

-11-